IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RSUI INDEMNITY COMPANY and COVINGTON SPECIALTY INSURANCE COMPANY, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 19-cv-5974 |
| THE CROSSING BAR & GRILL, INC., and DANIEL GAGEL, | ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Now come Plaintiffs, RSUI Indemnity Company and Covington Specialty Insurance Company, by and through their attorneys, Traub Lieberman Straus & Shrewsberry LLP, and for their Complaint for Declaratory Judgment against Defendants, The Crossing Bar & Grill, Inc., and Daniel Gagel, state as follows:

## NATURE OF THE ACTION

1.      Plaintiff RSUI Indemnity Company ("RSUI") is an insurance company that issued a liquor liability insurance policy to Defendant The Crossing Bar & Grill, Inc. ("Crossing Bar") under policy no. NBA00102400 for the policy period January 26, 2016 to January 26, 2017 ("the RSUI Policy").

2.      Plaintiff Covington Specialty Insurance Company ("Covington") issued a commercial general liability insurance policy to Crossing Bar under policy no. VBA41889900 for the policy period January 26, 2016 to January 26, 2017 ("the Covington Policy").

3.      Crossing Bar claims to be entitled to coverage under said policies in connection with an underlying personal injury lawsuit filed against Crossing Bar by Defendant Daniel Gagel ("Gagel").  RSUI and Covington deny that Crossing Bar is entitled to any coverage for said lawsuit

under said policies. RSUI and Covington bring this Complaint for Declaratory Judgment against Crossing Bar and Gagel pursuant to 28 U.S.C. §§ 2201, *et seq.*, and Federal Rule of Civil Procedure 57.

4.      Specifically, RSUI and Covington seek a declaration that Crossing Bar is not entitled to coverage under said policies with respect to a lawsuit styled *Daniel Gagel v. The Crossing Bar & Grill, Inc.*, filed in the Circuit Court of Cook County, Illinois County Department, Law Division, under case no. 2017L006479 (the "*Gagel* Lawsuit"). A copy of the complaint in the *Gagel* Lawsuit is attached hereto as **Exhibit A** and incorporated herein by reference.

5.      There exists an actual and justiciable controversy among the parties concerning their respective rights, duties, and obligations under and pursuant to the RSUI Policy and the Covington Policy issued to Crossing Bar. RSUI and Covington contend that coverage for Crossing Bar is precluded under the RSUI Policy and the Covington Policy in connection with the claims asserted in the *Gagel* Lawsuit based on the terms of the policy, applicable law, and Crossing Bar's material breach of the policies.

6.      RSUI and Covington have no adequate remedy at law and, therefore, seek a judicial declaration of their rights and duties in accordance with the RSUI Policy and Covington Policy. A judicial declaration is appropriate at this time so that RSUI and Covington may ascertain their rights and duties with respect to its obligations under the respective policies for the *Gagel* Lawsuit.

## THE PARTIES

7.      RSUI is, and at all relevant times was, an insurance company organized under the laws of New Hampshire with its principal place of business in the state of Georgia.

8.      Covington is, and at all relevant times was, an insurance company organized under the laws of New Hampshire with its principal place of business in Georgia.

9.     Crossing Bar & Grill, Inc. ("Crossing Bar") is, and at all relevant times was, a corporation organized under the laws of Illinois with its principal place of business in Illinois. Crossing Bar underwent an involuntary dissolution on or about January 11, 2019 and is currently dissolved.

10.     Daniel Gagel ("Gagel") is, and at all relevant times was, domiciled in Illinois and is therefore a citizen of Illinois. Gagel is named as a party to this lawsuit as a potentially necessary party under the Federal Rules of Civil Procedure.  RSUI and Covington agree to dismiss Gagel with prejudice if he stipulates to be bound by a judgment entered by the Court.

## JURISDICTION

11.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between plaintiffs and the defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs. Specifically, Crossing Bar seeks coverage from RSUI and Covington for a judgment totaling at least $193,484.23.

## VENUE

12.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because a substantial part of the events giving rise to this litigation occurred in this judicial district and because all of the defendants are residents of this judicial district.

## THE UNDERLYING LAWSUIT

### A.     THE *GAGEL* COMPLAINT

13.     On June 27, 2017, Gagel filed a complaint in the Circuit Court of Cook County, Illinois under case no. 2017 L 006470 (hereinafter, "*Gagel* Complaint" or "*Gagel* Lawsuit").

14.     The *Gagel* Complaint alleges that on or about January 14, 2017, defendant Crossing Bar owned, operated, managed, maintained and/or controlled a certain premise located at 6959 W.

111th Street, in the village of Worth, Cook County, Illinois, wherein Crossing Bar sold, gave and/or served alcoholic beverages to the general public.

15.     The *Gagel* Complaint seeks monetary damages for injuries Gagel allegedly sustained on or about January 14, 2017, while he was a patron at Crossing Bar and lawfully upon and about said premises.

16.     Count I of the *Gagel* Complaint asserts a claim for violation of Illinois' Dram Shop Act, 235 ILCS 5/6-21.

17.     Count I of the *Gagel* Complaint alleges that Crossing Bar, through it duly authorized agents, servants, and/or employees, sold, gave and/or served alcoholic beverages to their own employees and others, known intoxicated people, who consumed said alcoholic beverages and thereby were caused to become further intoxicated.

18.     Count I of the *Gagel* Complaint alleges that as a result of being intoxicated, individuals caused severe injuries to Gagel, by stabbing him multiple times throughout the body.

19.     The *Gagel* Complaint alleges that the severe and permanent injuries sustained by Gagel were occasioned by the violations of the Dram Shop Act by Crossing Bar enumerated in the pleading.

20.     Count II of the *Gagel* Complaint asserts a claim for negligence against Crossing Bar.

21.     Specifically, Count II of the *Gagel* Complaint alleges that Crossing Bar, through its agents, servants and/or employees knew, or in the exercise of ordinary care should have known, of the unruly behavior of its patrons, including employees and other individuals, and regardless of whether they were intoxicated or intoxicated by alcohol served alcohol to them in Crossing Bar's establishment.

22.     Count II of the *Gagel* Complaint further alleges that on numerous occasions, both prior and subsequent to January 14, 2017, Crossing Bar knew, or in the exercise of ordinary care should have known, of acts of violence directed towards the patrons of Crossing Bar by individuals who came into the establishment on a regular basis.

23.     Count II of the *Gagel* Complaint alleges that Crossing Bar owed a duty to exercise ordinary care for the safety of its patrons inside the premises of the Crossing Bar establishment.

24.     Count II of the *Gagel* Complaint alleges that notwithstanding this duty, Crossing Bar, individually and through its agents, servants and/or employees, was careless and negligent, and that as a direct and proximate result of certain negligent act and/or omissions, Gagel sustained severe and permanent injuries, physical and mental pain and anguish, and has incurred and will continue to incur medical expenses.

## B.     THE DEFAULT JUDGMENT, PROVE-UP, AND FINAL JUDGMENT

25.     On August 19, 2017, Crossing Bar was served with the complaint in the *Gagel* Lawsuit. A copy of the Certificate of Service is attached hereto as **Exhibit B**.

26.     Crossing Bar did not appear in the *Gagel* Lawsuit, either pro se or through counsel.

27.     On April 30, 2018, the court entered an Order of Default against Crossing Bar in the *Gagel* Lawsuit. A copy of the Order of Default is attached hereto as **Exhibit C**.

28.     Between April 30, 2018 and August 22, 2018, upon information and belief, Gagel provided a copy of the Order of Default to Crossing Bar.

29.     On August 22, 2018, the court entered a Default Judgment against Crossing Bar in the *Gagel* Lawsuit in the amount of $193,484.23. A copy of the Default Judgment is attached hereto as **Exhibit D**.

30.     The court in the *Gagel* Lawsuit allocated the judgment against Crossing Bar as follows: $65,990.23 to Count I and $127,494 to Count II. Count II damages were further broken down by the *Gagel* Lawsuit court as follows: $50,000 for past pain and suffering, $50,000 for disfigurement, and $27,494 for medical bills related to the event.

## C.     UNREASONABLY LATE NOTICE TO RSUI AND COVINGTON

31.     On September 17, 2018, Crossing Bar for the first time provided RSUI and Covington with information about the alleged stabbing incident.  On that date, Pete White on behalf of Crossing Bar wrote: "There was a stabbing that occurred in our parking lot, not inside the bar.  I'm not sure exactly what happened as I was not there at the time.  I know nothing happened inside the bar, but it did happen outside in the parking lot."

32.     On September 17, 2018, RSUI and Covington requested information from Crossing Bar about the incident, including the name of the manager on duty.

33.     On September 19, 2018, Crossing Bar wrote to RSUI and Covington: "My partner Mike was the manager on duty.  Keep in mind we really don't have many details we re-call from that night as we weren't in the parking lot.  Mike's copied on this Email and his cell is [. . .]."  On that same date, RSUI and Covington attempted to contact Mike on behalf of Crossing Bar.

34.     On September 19, 2018, RSUI and Covington also emailed Pete White on behalf of Crossing Bar and again requested information about the incident, and asked Crossing Bar to preserve any security footage from the night of the alleged stabbing incident.  In that same email, RSUI and Covington requested an "explanation as to why we are now receiving notice of the incident."

35.     On September 26, 2018, Crossing Bar responded to several questions, including the belief that Crossing Bar provided notice of the incident in 2017.  In a telephone conference between

RSUI/Covington and Crossing Bar on October 8, 2018, Crossing Bar stated that it reported the incident to Crossing Bar's own retail insurance agent, Dave Quintana at DEQ Insurance, as soon as the incident happened.

36.     Prior to September 17, 2018, neither RSUI/Covington, nor an agent of RSUI or Covington, received notice of the alleged stabbing incident from Crossing Bar's retail agent, Dave Quintana at DEQ Insurance.

37.     As of December 10, 2018, Crossing Bar and its retail agent still had not provided notice of the Lawsuit, Order of Default, or Default Judgment to RSUI or Covington.  RSUI and Covington, therefore, kept their files open to monitor for a lawsuit against Crossing Bar.

38.     On January 23, 2019, RSUI and Covington through their own investigation discovered the existence of the *Gagel* Lawsuit, the Order of Default and Default Judgment.

39.     On May 9, 2019, RSUI and Covington issued a coverage letter to Crossing Bar explaining the coverage issues implicated by the allegations of the *Gagel* Complaint and by the unreasonably late notice of the stabbing incident and *Gagel* Lawsuit, and also requesting additional information as to why Crossing Bar did not provide earlier notice of the alleged stabbing incident, *Gagel* Lawsuit, Order of Default, and Default Judgment.

40.     On May 30, 2019, after not receiving a response to their coverage letter, RSUI and Covington (through counsel) issued a follow-up email to Crossing Bar referencing the coverage letter and requesting a response.

41.     Between June 6, 2019 and August 2, 2019, RSUI and Covington (through counsel) corresponded with Crossing Bar (through counsel) attempting to clarifythe details of Crossing Bar's notice of the stabbing incident, *Gagel* Lawsuit, Order of Default, and Default Judgment.

**THE RSUI POLICY**

42.     RSUI issued a liquor liability insurance policy to Crossing Bar under policy no. NBA00102400, for the period of January 26, 2016 to January 26, 2017 ("RSUI Policy"). A true and correct copy of the RSUI Policy is attached hereto as **Exhibit E** and incorporated herein by reference.

43.     The RSUI Policy provides, in relevant part, the following with respect to the liquor liability coverage afforded therein:

**LIQUOR LIABILITY COVERAGE PART**
\* \* \*
**I.     LIQUOR LIABILITY COVERAGE**

>   **1.**  We will pay those sums that **you** become legally obligated to pay as damages because of **injury** to which this insurance applies if liability for **injury** arises out of the selling, serving or furnishing of any alcoholic beverage. The sale, service and furnishing of the alcoholic beverage must take place at or from the **insured premises**.

44.     The RSUI Policy includes the following definitions relevant to the insuring agreement:

**IV.     DEFINITIONS**
\* \* \*
>   **F.  Injury** means all damages, including damages because of **bodily injury** and **property damage**, and including damages for care, loss of services or loss of support.
\* \* \*
>   **H.  Insured Premises** means;
>   >   **1.**  The premises designated on the Declarations; and
>   >   **2.**  Any premises that **you** acquired during the policy period for use in manufacturing, distributing, selling, serving or giving alcoholic beverages if **you**:
>   >   >   **a.**  notify us within thirty (30) days after the acquisition; and
>   >   >   **b.**  have no other valid and collective insurance applicable to the loss.

45.     The RSUI Policy defines "bodily injury" to mean:

**IV.     DEFINITIONS**
\* \* \*

    **B. Bodily injury** means **bodily injury**, sickness or disease sustained by a person, including death resulting from any of these at any time.

46.    The RSUI Policy only provides coverage for damages that Crossing Bar becomes liable to pay because of "injury," including "bodily injury," arising out of the selling, serving, or furnishing of any alcoholic beverage which takes place at or from the premises identified in the Declarations of the RSUI Policy.

47.    The premises identified in the Declarations of the RSUI Policy is as follows: 10236 Ridgeland Avenue, Chicago Ridge, Illinois 60415. The *Gagel* Complaint alleges that the stabbing incident giving rise to Gagel's alleged injuries took place at a premises located at 6959 West 111th Street in Worth Illinois.

48.    Based on the allegations of the *Gagel* Complaint, the Insuring Agreement of the RSUI Policy is not satisfied because the pleading does not allege the sale, service, or furnishing of alcoholic beverages from an "insured premises."

49.    The RSUI Policy also provides, in relevant part, the following with respect to the insured's duties in the event of an injury, claim, or suit:

**V. CONDITIONS**

\* \* \*

**D.    Duties In The Event Of Injury, Claim or Suit**

    **1.**    **You** must see to it that we are notified promptly in writing when **injury** occurs which may result in a claim. Notice should include:

        **(1)**    How, when and where the **injury** or damage took place; and

        **(2)**    The names and addresses of any injured persons and witnesses.

    **2.**    If a claim is made or **suit** is brought against any **insured**, **you** must see to it that we receive prompt written notice of the claim or **suit**.

    **3.**    **You** and any other involved **insured** must:

      **a.**    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or **suit**;

      **b.**    Authorize us to obtain records and other information;

      **c.**    Cooperate with us in the investigation, settlement or defense of the claim or **suit**; and

      **d.**    Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the **insured** because of **injury** to which this insurance may also apply.

50.    The *Gagel* Lawsuit was filed on or about June 14, 2017, Crossing Bar was served with the *Gagel* Lawsuit on or about August 17, 2017, the Order of Default was entered on April 30, 2018, and the Default Judgment was entered on August 22, 2018. Crossing Bar first put RSUI on notice of the alleged stabbing incident on September 17, 2018.  RSUI discovered the existence of the *Gagel* Complaint, Order of Default, and Default Judgment on its own on January 23, 2019.

51.    Crossing Bar materially breached the RSUI Policy by failing to provide reasonable notice of the stabbing incident, the *Gagel* Lawsuit, and all documents relating to the *Gagel* Lawsuit, and RSUI was prejudiced as a result of the unreasonable notice.

52.    In addition to the foregoing, the RSUI Policy includes the following exclusion:

**II.    EXCLUSIONS**
This insurance does not apply to:
* * *

**I.    Injury** arising out of the intoxication of **your employee** while engaged in **your** business.

53.    The *Gagel* lawsuit alleges that Crossing Bar should have known of the unruly behavior of its patrons, including employees. Exclusion I., therefore, precludes coverage for the *Gagel* Suit.

54.     An endorsement to the RSUI Policy entitled "Illinois Changes – Liquor Liability" amends the liability limits of the policy as follows:

**EACH PERSON BODILY INJURY LIMIT          $65,071.86**

* * *

With respect to Illinois locations:

* * *

C.      The following paragraphs are added to Section III – LIMITS OF INSURANCE:

D.      Subject to the Aggregate Limit, the Each Person Bodily Injury Limit is the most we will pay for all **bodily injury** sustained by one person as the result of selling, serving or furnishing any alcoholic beverages to one person. [. . .]

55.     In the alternative, RSUI's monetary obligations for a settlement or judgment on behalf of Crossing Bar are limited by the Illinois Changes Endorsement.

## THE COVINGTON POLICY

56.     Covington issued a commercial general liability insurance policy to Crossing Bar under policy no. VBA41889900, for the period of January 26, 2016 to January 26, 2017 ("Covington Policy"). A true and correct copy of the Covington Policy is attached hereto as **Exhibit F** and incorporated herein by reference.

57.     Coverage A of the Covington Policy provides, in relevant part, the following with respect to the commercial general liability coverage afforded therein:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

* * *

**SECTION I- COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.      Insuring Agreement**

a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1)     The amount we will pay for damages is limited as described in Section **III** - Limits Of Insurance; and

(2)     Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

**b.**     This insurance applies to "bodily injury" and "property damage" only if:

(1)     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)     The "bodily injury" or "property damage" occurs during the policy period; and

(3)     Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

58.     The Covington Policy defines the terms "bodily injury," "occurrence," and "suit"

as follows:

**SECTION V – DEFINITIONS**

\* \* \*

**3.**     "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\* \* \*

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. [. . .]

59. The Covington Policy only provides coverage for "bodily injury" caused by an accident. The *Gagel* Lawsuit alleges that Crossing Bar was aware of the violent propensities of its employees and patrons prior to the date of the alleged stabbing incident. The *Gagel* Lawsuit also alleges that Crossing Bar was aware that employees and patrons were intoxicated on the date of the stabbing incident and continued to serve them alcohol despite their intoxication.

60. The *Gagel* Lawsuit does not allege injury arising out of an "occurrence," such that the Insuring Agreement of the Covington Policy is not satisfied by the *Gagel* Lawsuit.

61. The Covington Policy also provides, in relevant part, the following with respect to the insured's duties in the event of an occurrence, claim or suit:

### SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

\* \* \*

**2.     Duties In The Event Of Occurrence, Offense, Claim or Suit**

**a.**     You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)**     How, when and where the "occurrence" or offense took place;

**(2)**     The names and addresses of any injured persons and witnesses; and

**(3)**     The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.**     If a claim is made or "suit" is brought against any insured, you must:

     **(1)**     Immediately record the specifics of the claim or "suit" and the date received; and

     **(2)**     Notify us as soon as practicable.

     You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

62.     The *Gagel* Lawsuit was filed on or about June 14, 2017, Crossing Bar was served with the *Gagel* Lawsuit on or about August 17, 2017, the Order of Default was entered on April 30, 2018, and the Default Judgment was entered on August 22, 2018. Crossing Bar first put Covington on notice of the alleged stabbing incident on September 17, 2018. Covington discovered the existence of the *Gagel* Complaint, Order of Default, and Default Judgment on its own on January 23, 2019.

63.     Crossing Bar materially breached the Covington Policy by failing to provide reasonable notice of the stabbing incident, the *Gagel* Lawsuit, and all documents relating to the *Gagel* Lawsuit, and Covington was prejudiced as a result of the unreasonable notice

64.     In addition to the foregoing, the Covington Policy contains the following exclusion:

### EXCLUSION – LIQUOR – ABSOLUTE

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, item c. Liquor Liability is deleted and replaced by the following:

     **c.**     "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

     (1) Causing or contributing to the intoxication of any person;
     (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
     (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

> (a) The supervision, hiring, employment, training or monitoring of others by that insured; or
> (b) Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph (1), (2), or (3) above.

65.     The *Gagel* Lawsuit alleges that Gagel sustained injuries because Crossing Bar served alcoholic beverages to their own employees or others.  The Absolute Liquor Liability Exclusion, therefore, precludes coverage.

66.     Coverage under the Covington Policy is also subject to an Assault and Battery Exclusion, which provides as follows:

## LIMITATION – ASSAULT AND BATTERY

This endorsement modifies insurance under the following:

## COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**1.**     In consideration of the premium charged, and notwithstanding anything contained elsewhere in this policy to the contrary, it is agreed that no coverage of any kind (including but not limited to cost of defense) is provided by this policy for "bodily injury", "property damage", or "personal and advertising injury" directly or indirectly arising from any actual or alleged:

> **a.**     "Assault" and/or "Battery", whether caused by or at the instruction of or negligence of the insured, its employees, patrons, or any persons or causes whatsoever, and irrespective of whether the claim alleges any negligent action; and

> **b.**     Negligent acts, errors or omissions of or by any insured in connection with the hiring, retention, supervision or control of employees, agents or representatives causing, contributing to, relating to or accounting for the "Assault" and/or "Battery".

2.    This insurance shall apply to "bodily injury", "property damage", or "personal and advertising injury" arising from actual or alleged "assault" and/or "battery" committed by you or your "employees" to protect persons and/or property.

The maximum we will pay for such damages is limited as set forth below. The LIMIT OF INSURANCE shown below for Each "Occurrence" is our maximum liability for all damages because of any one "occurrence." The LIMIT OF INSURANCE shown below as Aggregate, subject to the aforementioned provision regarding Each "Occurrence", is the total limit of our liability for all damages.

The limits shown shall reduce the limits provided in **SECTION III – LIMITS OF INSURANCE.**

LIMIT OF INSURANCE

$100,000     Each "Occurrence"
$300,000     Aggregate

3.    For purposes of this endorsement, the following definitions shall apply:

"Assault" means the apprehension or harmful or offensive contact between or among two or more persons by threat through words or deeds.

"Battery" means the harmful or offensive contact between or among two or more persons.

This endorsement shall apply whether or not such "Assault" and/or "Battery" as so defined is alleged to be intentional, willful, reckless, negligence, or on any other basis.

67.    The Covington Policy does not provide coverage for injury actually or allegedly caused by assault and/or battery, unless the assault and battery was committed to protect persons and/or property. The *Gagel* Lawsuit alleges that Gagel was stabbed multiple times throughout his body by intoxicated individuals. The Assault and Battery Exclusion, therefore, precludes coverage for the *Gagel* Lawsuit.

68.    An endorsement to the Covington Policy entitled "Limitation of Coverage to Designated Premises or Project" limits coverage as follows:

**SCHEDULE**

**PREMISES:**
10236 Ridgeland Avenue
Chicago Ridge, IL 60415

**PROJECT:**
BAR/GRILL

\* \* \*

This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of:

      **1.**     The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or

      **2.**     The project shown in the Schedule.

69.    The Covington Policy only applies to injury arising out of the ownership, maintenance, or use of 10236 Ridgeland Avenue. The *Gagel* Lawsuit alleges misconduct arising out of the ownership, maintenance, or use of 6959 West 111th Street in Worth Illinois.

**COUNT I – DECLARATORY RELIEF**
**NO DEFENSE OR INDEMNITY UNDER THE RSUI POLICY**

70.    Plaintiffs adopt and reallege the allegations in paragraphs 1 through 69 of its Complaint for Declaratory Judgment as and for paragraph 70, as if fully set forth herein.

71.    RSUI has and had no duty under the RSUI Policy to defend Crossing Bar in the *Gagel* Lawsuit or to indemnify it for any judgment or settlement entered in the *Gagel* Lawsuit for the following reasons:

    a.    The Insuring Agreement of the Liquor Liability Coverage Part is not satisfied because the *Gagel* Lawsuit does not allege the sale, service, or furnishing of alcohol from an "insured premises."

    b.    Crossing Bar materially breached the Conditions of the RSUI Policy by failing to provide reasonable notice of the alleged stabbing incident, the *Gagel* Lawsuit, the Order of Default, or the Default Judgment to RSUI, and RSUI has been prejudiced as a result of the unreasonable notice.

    c.    Exclusion I. precludes coverage because the injury at issue in the *Gagel* Lawsuit is alleged to have arisen out of the intoxication of Crossing Bar's employees while engaged in Crossing Bar's business.

d.     In the alternative, RSUI's monetary obligations for a settlement or judgment on behalf of Crossing Bar are limited by the Illinois Changes Endorsement.

72.     An actual controversy exists between RSUI, Crossing Bar, and Gagel, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, RSUI, respectfully prays that this Honorable Court:

a.     Determine and adjudicate the rights and liabilities of the parties hereto with respect to the RSUI Policy;

b.     Find and declare that RSUI has and had no duty under the RSUI Policy to defend Crossing Bar against the *Gagel* Lawsuit or to indemnify the Crossing Bar for any judgment or settlement entered therein; and

c.     Grant RSUI such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT II – DECLARATORY RELIEF
## NO DEFENSE OR INDEMNITY UNDER THE COVINGTON POLICY

73.     Plaintiffs adopt and reallege the allegations in paragraphs 1 through 72 of its Complaint for Declaratory Judgment as and for paragraph 73, as if fully set forth herein.

74.     Covington has and had no duty under the Covington Policy to defend Crossing Bar against the *Gagel* Lawsuit or to indemnify Crossing Bar for any judgment or settlement entered in the *Gagel* Lawsuit for the following reasons:

a.     The *Gagel* Lawsuit does not allege an "occurrence," such that the Insuring Agreement of the Covington Policy is not satisfied.

b.     Crossing Bar materially breached the Conditions of the Covington Policy by failing to provide reasonable notice of the alleged stabbing incident, the *Gagel* Lawsuit, the Order of Default, or the Default Judgment to Covington, and Covington has been prejudiced as a result of the unreasonable notice.

c.     The Liquor Liability Exclusion applies to preclude coverage.

d.     The Assault and Battery Exclusion applies to preclude coverage.

e.   The Designated Premises Limitation limits coverage under the Covington Policy to injury arising out of the ownership, maintenance, or use of 10236 Ridgeland Avenue, and the *Gagel* Lawsuit alleges injury arising out of a different address.

75.   An actual controversy exists between Covington, Crossing Bar, and Gagel, and, by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Covington, respectfully prays that this Honorable Court:

a.   Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Covington Policy;

b.   Find and declare that Covington has and had no duty under the Covington Policy to defend Crossing Bar against the *Gagel* Lawsuit or to indemnify the Crossing Bar for any judgment or settlement entered therein; and

c.   Grant Covington such other and further relief that the Court deems proper under the facts and circumstances.

## **JURY DEMAND**

Plaintiffs demand the right to trial by jury on all issues so triable.

Respectfully submitted,

RSUI INDEMNITY COMPANY and
COVINGTON SPECIALTY INSURANCE
COMPANY

/s/ *Jeremy S. Macklin*
Jeremy S. Macklin
One of its Attorneys

Michael S. Knippen
Jeremy S. Macklin
Anthony Hatzilabrou
Traub Lieberman Straus & Shrewsberry LLP
303 W. Madison, Ste. 1200
Chicago, IL 60606
Telephone: 312-332-3900
Facsimile: 312-332-3908
mknippen@tlsslaw.com
jmacklin@tlsslaw.com
thatzilabrou@tlsslaw.com